# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| JEFFREY JEANNOT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 18-1977 |
| PHILADELPHIA HOUSING AUTHORITY, BRANVILLE G. BARD, JR., Chief of Police (in his individual and official capacities), and WILIAM BRITT, Inspector (in his individual and official capacities), | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                          **OCTOBER 2, 2018**

Plaintiff Jeffrey Jeannot ("Jeannot") brings this action against Defendants Philadelphia Housing Authority (the "Housing Authority"), Branville G. Bard, Jr. ("Bard"), and Wiliam Britt[1] ("Britt"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983, and the First Amendment under § 1983.

Defendants move to dismiss the First Amended Complaint in its entirety, contending that Jeannot fails to state a claim upon which relief can be granted. Jeannot has filed a Response in Opposition to Defendants' Motion to Dismiss the First Amended Complaint. For the reasons noted below, Defendants' Motion is granted.

---

[1] Jeannot's original complaint and First Amended Complaint both style Britt's first name as "Wiliam" in the caption. Neither party has moved to amend the case caption, and so we will continue to spell it that way as well.

I. **BACKGROUND**[2]

The Housing Authority manages and operates a police department commonly known as the "Philadelphia Housing Authority Police Department." (First Am. Compl. ¶ 8.) Jeannot began working as a police officer there in approximately September 2014. (*Id.* ¶ 16.)

On May 7, 2017, Jeannot was working a shift from 7:00 PM to 7:00 AM with his partner for the night, Officer Roland Rodgers ("Officer Rodgers").[3] (*Id.* ¶ 17.) During his personal time on the shift, Jeannot filled a prescription for Adderall at a Rite Aide. (*Id.* ¶ 18.) Jeannot alleges that his physician prescribed Adderall "so that he could maintain the focus, concentration and cognitive functions necessary for him to perform his duties as a police officer." (*Id.* ¶ 19.) He further claims he provided prior notice to his supervisor that he was prescribed Adderall. (*Id.*)

Later that night, Jeannot and Officer Rodgers responded to a domestic dispute "which [Jeannot] resolved peacefully." (*Id.* ¶ 20.) Jeannot claims Officer Rodgers secretly recorded him during the response to the domestic call and was away from the patrol car speaking on the phone for a significant amount of time. (*Id.*)

On the morning of May 8, 2017, at approximately 1:50 AM, Officer Rodgers received a call from the sergeant who said to return to the police headquarters to complete some "Municipal Police Officer Training." (*Id.* ¶ 21.) When Jeannot and Officer Rodgers returned to the headquarters, the sergeant informed Jeannot that he could go home early, or else he would have to sit in the office for the remainder of the shift without anything to do. (*Id.* ¶¶ 21-22.) Jeannot

---

[2] We take the facts alleged in the First Amended Complaint as true, as we must when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

[3] At times, Officer Rodgers' name is spelled "Rodgers" or "Rogers." (*Compare* First Am. Compl. ¶ 17, *with* ¶¶ 20-21.) For consistency, we will utilize the former.

went home around 3:45 AM and provided his patrol log and paperwork for the night to Sergeant Matthew Richardson, who said, "Ok, you're good to go. See you later." (*Id.* ¶ 23.)

On the afternoon of May 8, 2017, Jeannot received a knock on his front door from Lieutenant Hakeem Dunbar ("Lt. Dunbar"). (*Id.* ¶ 24.) Lt. Dunbar informed Jeannot that he was under investigation and was being placed on restrictive duty, but would not give a reason why such actions were being taken. (*Id.*) Because Jeannot was placed on restrictive duty, he was required to provide Lt. Dunbar with his locker combination for his firearm. (*Id.*) Additionally, Lt. Dunbar told Jeannot that he was required to come to his shift the following day in business casual clothing, rather than in his uniform. (*Id.*) Lt. Dunbar said he could not speak about the reason for restrictive duty, but asked whether anything "unusual happened last night" and whether Jeannot "was . . . not feeling well the night before." (*Id.* ¶ 25.)

When Jeannot arrived for his next shift, Lt. Dunbar stated he was taking Jeannot to Episcopal Hospital for a drug test based on reasonable suspicion. (*Id.* ¶ 26.) Jeannot inquired why, if he was on reasonable suspicion on the night/early morning of May 7 and 8, 2017, did the police department not require a drug test then. (*Id.* ¶ 28.) Lt. Dunbar responded that the sergeant made a mistake, but that if everything came back clear, Jeannot would be back working on the street in a few days. (*Id.* ¶¶ 27-28.)

On May 26, 2017, Jeannot was placed on suspension with a recommendation for "Discharge/Probationary Separation." (*Id.* ¶ 29.) Defendants did not provide him with the results of the drug test, nor did they give him an opportunity to make a statement in response to the reasonable suspicion of his apparent drug use. (*Id.* ¶¶ 30-31.) Regarding his use of Adderall, Jeannot claims that he "has a written doctor's note stating that his prescription of Adderall would not interfere with his ability to perform his duties as a police officer." (*Id.* ¶ 32.) He further

avers that he presented the doctor's note "to demonstrate that the Adderall was a reasonable accommodation to assist with his mental thinking, focus and concentration and allow him to perform the essential functions of his position" as a police officer. (*Id.*)

Jeannot timely filed suit in this Court following his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and his receipt of a right-to-sue letter. (*Id.* ¶¶ 4-6.) In response to Defendants' first Motion to Dismiss, he filed a First Amended Complaint that contains seven counts. Counts I and II allege actual and perceived disability discrimination in violation of the ADA and PHRA, respectively[4]; Count III alleges retaliation in violation of the PHRA; Count IV alleges aiding and abetting liability under the PHRA; Count V is under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment; Count VI is under § 1983 for retaliation in violation of the First Amendment; and Count VII alleges violations of the FMLA.

Defendants again move to dismiss the entire action pursuant to Federal Rule of Civil Procedure 12(b)(6). After Defendants filed their Motion to Dismiss, the Court signed a "Stipulation for Partial Voluntary Dismissal of Claims" that dismissed Counts V through VII without prejudice. (*See* Doc. No. 14.)

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the

---

[4] Count I is directed only towards the Housing Authority.

4

complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

## III. DISCUSSION

### A. Disability Discrimination (Counts I & II)

Jeannot alleges parallel claims of actual and perceived disability discrimination under the ADA and PHRA.[5] The ADA, as amended, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff must plead the following three elements to establish a *prima facie* case of discrimination: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable

---

[5] We will group our discussion of the ADA and PHRA together, as disability discrimination claims under the two statutes are analyzed under the same framework. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 n.5 (3d Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002)); *see also Schneider v. Works*, 223 F. Supp. 3d 308, 314 n.1 (E.D. Pa. 2016) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)); *Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 383 n.7 (E.D. Pa. 2013).

5

accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

Defendants first argue that Jeannot's ADA and PHRA discrimination claims are subject to dismissal because he fails to plead that he is disabled within the meaning of the ADA. (*See* Defs.' Br. Supp. Mot. Dismiss Pl.'s First Am. Compl. 4-9.) Under the ADA, an individual is considered "disabled" if he has (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Jeannot alleges that Defendants "engaged in an unlawful discriminatory practice by discriminating against [him] because of his actual and/or perceived disability." (First Am. Compl. ¶ 53.) Jeannot has therefore alleged claims of actual disability and "regarded as" disability under the ADA and PHRA, both of which Defendants seek to dismiss.

    **1.**    *Actual Disability*

A plaintiff sufficiently alleges a claim of actual disability if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 185 (3d Cir. 1999). The disability must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). In turn, "major life activities" include, *inter alia*, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, interacting with others . . . working . . . and [t]he operation of a major bodily function." *Id.* § 1630.2(i)(1)(i)-(ii).

Defendants argue that Jeannot fails to state a claim of actual disability because there are no allegations of any impairment, let alone an impairment that substantially limits a major life activity. (*See* Defs.' Br. Supp. Mot. Dismiss Pl.'s First Am. Compl. 6.) Tellingly, Jeannot fails to provide any response to Defendants' argument, effectively abandoning the claim at this stage of the proceedings. Nevertheless, we agree with Defendants that Jeannot fails to state a claim of actual disability and will dismiss it with prejudice.

Despite amending his original complaint, Jeannot fails to provide any factual allegations that he suffered from an impairment. The most Jeannot alleges regarding an actual disability is that he was prescribed Adderall "so that he could maintain the focus, concentration and cognitive functions necessary for him to perform his duties as a police officer." (First Am. Compl. ¶ 19.) At no time, however, does he actually allege that he has problems focusing or maintaining concentration. In fact, he pleads the exact opposite, claiming that "Defendants were under the *misconception* that since [he] was taking Adderall, that he was substantially limited in a major life activity such as thinking and maintaining concentration." (*Id.* ¶ 40) (emphasis added). Curiously, despite having a prescription for Adderall, Jeannot never mentions any diagnosis associated with his prescription for the drug or a limitation of a major life activity.

Accordingly, because Jeannot effectively pleads that he does not have problems focusing, thinking, or maintaining concentration, and that he fails to provide a response to Defendants' argument, we will dismiss his actual disability claim with prejudice.[6]

---

[6] While it is somewhat unclear as to whether Jeannot is bringing a failure to accommodate claim, it is well-settled that "[e]mployers do not need to reasonably accommodate individuals who do not have an actual disability." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 251 (E.D.N.Y. 2015) (citing 42 U.S.C. § 12201(h)).

## 2. *"Regarded As" Disabled*

Jeannot filed his First Amended Complaint to add an alternative claim of "regarded as" disability following Defendants' first Motion to Dismiss. (*See* First Am. Compl. ¶ 39.) As mentioned above, an individual qualifies as having a "disability" under the ADA if he is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(C). The ADA instructs that the individual must "establish[] that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). Transitory and minor impairments, defined as those with an actual or expected duration of six months or less, cannot serve as a basis for regarded as disability. *See id.* § 12102(3)(B).

The linchpin of Jeannot's regarded as claim of discrimination is that he provided prior notice to his supervisor that he was prescribed Adderall to assist him with performing his duties as a police officer. (First Am. Compl. ¶ 19.) The doctor's note states that his Adderall prescription would not interfere with his ability to be a police officer, and Jeannot presented it to his employer "to demonstrate that the Adderall was a reasonable accommodation to assist with his mental thinking, focus and concentration." (*Id.* ¶ 32.) Jeannot's theory is that, because Defendants knew he was taking Adderall, they were under the misconception that he was substantially limited in thinking, maintaining concentration, and accordingly was mentally unfit to perform the functions of a police officer. (*Id.* ¶ 40.) Defendants argue that these allegations are insufficient to plead a claim of regarded as disability discrimination. We agree.

Jeannot's claim hinges on the mere fact he allegedly gave his supervisor a note that stated he had a prescription for Adderall. From there, his theory makes the leap that because the

---

Therefore, to the extent Jeannot pleads a claim of failure to accommodate under the ADA and PHRA, it is dismissed with prejudice because he has not alleged an actual disability.

Defendants knew he was taking Adderall, they necessarily regarded him as being impaired in thinking, focusing, and maintaining concentration. However, the United States Court of Appeals for the Third Circuit has explicitly held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)); *see also Walker v. U.S. Sec'y of the Air Force*, 7 F. Supp. 3d 438, 455 (D.N.J. 2014) (citation omitted); *Ramage v. Rescot Sys. Grp., Inc.*, 834 F. Supp. 2d 309, 323 (E.D. Pa. 2011) (citation omitted). If an employer's knowledge of an impairment is insufficient on its own to demonstrate it regarded the employee as disabled, then surely knowledge an employee is taking medication is insufficient as well. To conclude otherwise would allow any individual who provides notice to his employer that he is taking a particular medication, without any additional factual allegations, to establish a *prima facie* case of regarded as disability discrimination. *See Kelly*, 94 F.3d at 109.

A claim of regarded as discrimination "focuses not on [the plaintiff] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." *Id.* at 108-09 (citation omitted). Here, too, Jeannot fails in pleading a sufficient claim. For instance, he alleges no facts related to statements or actions by his colleagues or supervisors that indicate they regarded him as being impaired. The only fact that Jeannot pleads is that he provided a doctor's note to his supervisor stating he has a prescription for Adderall. Without any additional factual allegations regarding how others in his workplace reacted and perceived him, his theory requires one to make the logical leap that his prescription for Adderall necessitated in those around him perceiving him as being impaired. Under these circumstances, we conclude

that Jeannot fails to state a claim of regarded as discrimination and will dismiss his claim without prejudice.[7]

B.     Retaliation (Count III)

Defendants next move to dismiss Jeannot's state law claim of retaliation. The PHRA provides that "[i]t shall be an unlawful discriminatory practice . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing." 43 Pa. Cons. Stat. § 955(c). To establish a *prima facie* case of retaliation, a plaintiff must show (1) that he engaged in protected activity; (2) suffered an adverse employment action by the employer; and (3) there is a causal connection between the protected activity and the adverse employment action. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)); *Schneider v. Works*, 223 F. Supp. 3d 308, 320 (E.D. Pa. 2016) (citation omitted). Defendants argue that Jeannot's retaliation claim must be dismissed because he fails to plead that he engaged in any protected activity. We agree.

At the outset, we note that Jeannot fails to respond to Defendants' arguments concerning dismissing his claim of retaliation. Thus, he has effectively abandoned his state law retaliation claim. Nevertheless, a review of the factual allegations in the First Amended Complaint reveals that his claim should be dismissed. Simply put, he alleges no opposition to any form of discrimination prior to his termination. The only opposition Jeannot pleads was his charge of discrimination to the EEOC, but that did not occur until November 2017, nearly six months after his employment with the Housing Authority ended. Accordingly, given that Jeannot failed to

---

[7] Jeannot's "regarded as" claim was asserted for the first time in his First Amended Complaint. Therefore, we will give him an additional opportunity to sufficiently plead the claim in a Second Amended Complaint.

respond to Defendants' arguments concerning retaliation, we will dismiss the claim with prejudice.

      **C.**      **Aiding and Abetting Liability (Count IV)**

Finally, Defendants move to dismiss the state law claim of aiding and abetting liability. Under the PHRA, it is unlawful for any "person[] [or] employer . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . or to attempt . . . to commit any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Cons. Stat. § 955(e). Defendants assert that the aiding and abetting claim against Britt and Bard should be dismissed because: (1) the claim cannot survive absent a primary violation of the PHRA or a federal law counterpart; and (2) even assuming Jeannot has sufficiently pleaded disability discrimination or retaliation under the PHRA, he nonetheless fails to state a claim against Britt and Bard. We agree with Defendants on both points and will dismiss the claim against them without prejudice.

As to Defendants' first argument, "[i]ndividual defendants[] cannot . . . be liable for violations of [§ 955(e)] if there is no primary violation of the PHRA." *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 446 (E.D. Pa. 2015) (citing *Burgess-Walls v. Brown*, No. 11-275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011); *Kaniuka v. Good Shepherd Home*, No. 05-2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006)); *see also Dickinson v. Millersville Univ. of Pa.*, No. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. Apr. 3, 2014) (citations omitted). We have dismissed all of Jeannot's claims under the ADA and PHRA. Consequently, we will dismiss his aiding and abetting liability claim against Bard and Britt, but such dismissal will be without prejudice because of Jeannot's ability to amend his claim of regarded as discrimination.

11

The Court also agrees that Jeannot fails to plead any facts that Bard and Britt had any relationship to the claims of discrimination. Jeannot pleads that Bard was the Philadelphia Housing Authority Police Department Chief of Police, had supervisory authority over him, and was responsible for hiring, screening, training, supervising, and disciplining employees. (First Am. Compl. ¶¶ 10-11.) As to Britt, Jeannot merely pleads that Britt "was and still is an employee of [the Housing Authority] as an Inspector" and that he "had supervisory authority over" Jeannot. (*Id.* ¶¶ 12-13.) However, bare allegations that an individual has supervisory authority over the terms and conditions of a plaintiff's employment are insufficient to sustain a claim of aiding and abetting liability under the PHRA. *See Miles v. City of Phila.*, No. 11-4040, 2013 WL 125186, at *8 (E.D. Pa. Jan. 10, 2013) (citing *Thorpe v. Reading Hosp.*, No. 06-828, 2006 WL 3196456, at *7 (E.D. Pa. Nov. 1, 2006)); *Destefano v. Henry Michell Co.*, No. 99-5501, 2000 WL 433993, at *3 (E.D. Pa. Apr. 13, 2000) (dismissing claim under § 955(e) because complaint failed to allege individual defendants intended to aid in employer's discriminatory behavior or shared a common purpose with employer to retaliate).

In this case, Jeannot pleads only that Bard and Britt had supervisory authority over him. Such allegations are insufficient to sustain a claim of aiding and abetting liability under the PHRA. Accordingly, the state law aiding and abetting liability claim is dismissed without prejudice.

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss the First Amended Complaint is granted. Jeannot's claim of actual disability in Counts I and II is dismissed with prejudice; his regarded as claim of disability discrimination in Counts I and II is dismissed

without prejudice; his claim of retaliation in Count III is dismissed with prejudice; and his claim of aiding and abetting liability against Bard and Britt in Count IV is dismissed without prejudice.

An appropriate Order follows.